**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **AMANDA REYNERO,** individually, and on behalf of others similarly situated, | Case No.: |
| Plaintiff, | Hon.: |
| vs. | Hon.: |
| **MRO CORPORATION**, a Pennsylvania Corporation, | |
| Defendant. | |

---

**COLLECTIVE AND CLASS ACTION[1]**
**COMPLAINT AND JURY DEMAND**

Plaintiff, AMANDA REYNERO ("Reynero" or "Plaintiff"), individually and on behalf of all others similarly situated, by and through her attorneys, hereby brings this Class/Collective Action Complaint against Defendant MRO CORPORATION ("Defendant" or "MRO"), and states as follows:

**INTRODUCTION**

1.      This is a collective and class action brought pursuant to 29 U.S.C. § 216(b) and Fed. R. Civ. P. 23 and arising from Defendant's willful violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq.*, and for common law claims of breach of contract and unjust enrichment.

2.      MRO is a clinical data partner that provides technology and software solutions for the secure and compliant exchange of protected health information. The company activates clinical data for healthcare organizations through services including data management, disclosure

---

[1] If additional plaintiffs with standing to assert state-law class claims opt into or join this case, Plaintiff may seek leave to amend the Complaint to include such claims.

management, risk adjustment, and revenue integrity.

3.      MRO bills itself as "the leader in enterprise clinical data management and intelligent data exchange." https://mrocorp.com/news/mro-earns-fifth-consecutive-usa-today-national-top-workplaces-award/ (last visited June 16, 2026).

4.      To support its business operations, Defendant employs remote, brick and mortar and hybrid hourly employees throughout the country to provide its customers with customer support services.

5.      These hourly employees, hereinafter collectively referred to as Customer Service Representatives (or "CSRs"), have a variety of internal job titles, including "Call Center Representative" "Call Center Customer Service Representative," and "Requester Services Specialist I," "Requester Services Specialist II," "Requester Services Specialist III," "Medical Records Specialist," and "ROI Medical Records Specialist" among others.

6.      Regardless of their specific job title, the material aspects of employment, duties, and the wage and hour violations complained of herein are the same for all CSRs.

7.      The U.S. Department of Labor ("DOL") recognizes that call center jobs, like those held by Defendant's CSRs, are homogenous, and in July 2008, the DOL issued Fact Sheet #64 to alert call center employees to some of the abuses which are prevalent in the industry.  *See* DOL Fact Sheet #64: Call Centers under the Fair Labor Standards Act (FLSA), https://www.dol.gov/whd/regs/compliance/whdfs64.pdf.

8.      One of those abuses, present in this case, is the employer's refusal to pay for work "from the beginning of the first principal activity of the workday to the end of the last principal activity of the workday." *Id*. at p. 2.

9.      More specifically, DOL Fact Sheet #64 condemns an employer's non-payment of

an employee's necessary pre-shift activities: "An example of the first principal activity of the day for agents/specialists/representatives working in call centers includes starting the computer to download work instructions, computer applications and work-related emails." *Id.* Additionally, the FLSA requires that "[a] daily or weekly record of all hours worked, including time spent in pre-shift and post-shift job-related activities, must be kept." *Id*.

10. Defendant requires its CSRs to work a full-time schedule, plus overtime, however, Defendant does not compensate CSRs for all work performed.

11. Defendant requires its CSRs to perform compensable work tasks off-the-clock before and after their scheduled shifts and during their unpaid meal periods.

12. This policy results in CSRs not being paid for all time worked, including overtime.

13. While performing their job responsibilities, Defendant's CSRs use multiple computer networks, software programs, applications and phone systems.

14. The time CSRs spend booting up and logging into these programs and applications before, during and after their shifts is compensable because the programs and applications are an integral, indispensable and important part of the CSRs' work, and they cannot perform their jobs effectively without them.

15. Defendant's CSRs all perform essentially the same tasks and are required to use the same or similar computer programs, software programs, applications and phone systems.

16. Defendant's CSRs all follow the same timekeeping process and are subject to the same relevant timekeeping and attendance policies.

17. Plaintiff seeks to represent in this action all current and former CSRs who are similarly situated to each other in terms of their positions, job duties, pay structure and Defendant's violations of federal and state law.

18.     Defendant knew or should have known how long it takes CSRs to complete their off-the-clock work, and Defendant could have properly compensated Plaintiff and the putative Collective and Class for this work, but did not.

19.     Defendant knew or should have known that CSRs, including Plaintiff, worked overtime hours for which they were not compensated.

20.     Additionally, despite both state and federal law clearly requiring overtime premiums to be paid for all hours worked in excess of forty in a workweek, Defendant often failed to pay overtime premiums for recorded hours worked in excess of forty and instead unjustifiably paid CSRs at their regular rate for overtime hours.

21.     Defendant also paid CSRs non-discretionary performance-based incentive pay, which Defendant failed to incorporate into the calculation of the CSRs' overtime rates, in violation of the FLSA and its governing regulations.

22.     Plaintiff seek a declaration that their rights, and the rights of the putative Collective and Classes, were violated, an award of unpaid wages, an award of liquidated damages, injunctive and declaratory relief, attendant penalties and an award of attorneys' fees and costs to make them, the Collective and Class whole for damages they suffered, and to ensure that they and future workers will not be subjected by Defendant to such illegal conduct in the future.

## JURISDICTION

23.     This Court has subject matter jurisdiction over Plaintiff's FLSA claims pursuant to 28 U.S.C. § 1331 because Plaintiff's claims raise a federal question under 29 U.S.C. § 201, *et seq.*

24.     Additionally, this Court has jurisdiction over Plaintiff's FLSA claims pursuant to 29 U.S.C. § 216(b), which provides that suit under the FLSA "may be maintained against any employer … in any Federal or State court of competent jurisdiction."

4

25.    This Court has general personal jurisdiction over Defendant and all the claims alleged herein, because Defendant is a Pennsylvania For-Profit Corporation and is headquartered in this District.

26.    Defendant maintains its principal office and corporate headquarters at 1000 Madison Avenue, Suite 100,  Norristown, PA 19403.

27.    Defendant's annual sales exceed $500,000 and Defendant has more than two (2) employees, so the FLSA applies in this case on an enterprise basis.

28.    Defendant's CSRs, including Plaintiff, engage in interstate commerce or in the production of goods for commerce and therefore they are also covered by the FLSA on an individual basis, by virtue of their regular and routine use of interstate phone lines in the performance of their job duties.

29.    This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367 because they are so closely related to Plaintiff's federal claims that they form part of the same case or controversy under Article III of the United States Constitution.

30.    This Court is empowered to issue a declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2202.

31.    This Court has personal jurisdiction over Defendant because it conducts business within the state of Pennsylvania, has its principal place of business and headquarters in this District, is a Pennsylvania Corporation, lists Norristown as its "domicile," and employs individuals within this District.

32.    This Court also has personal jurisdiction over Defendant because it has purposefully availed itself of the privilege of conducting activities in the state of Pennsylvania, has established minimum contacts sufficient to confer jurisdiction over it and has its principal place of

business in this district and division; and the assumption of jurisdiction over Defendant will not offend traditional notions of fair play and substantial justice and is consistent with the Constitutional requirements of due process.

## VENUE

33. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) and (c) because Defendant conducts substantial business activities within this District, resides in this District, and maintains its principal place of business in this District.

## PARTIES

34. Plaintiff is a Michigan resident/citizen who worked for Defendant as CSR in Michigan within the last three (3) years.

35. Defendant paid Plaintiff for her services in the form of an hourly wage, for all credited hours worked, most recently at the rate of $17.50 per hour, plus non-discretionary incentive payments, pursuant to an agreement between the Parties.

36. Plaintiff signed a consent to join this collective action lawsuit. **EXHIBIT 1**, Reynero Consent to Join.

37. Defendant is a Pennsylvania For-Profit Corporation, headquartered in Norristown, Pennsylvania, with its principal place of business located at 1000 Madison Avenue, Suite 100. Norristown, PA 19403.

## GENERAL ALLEGATIONS

38. Defendant employed Plaintiff as a CSRs within the last two (2) years.

39. Defendant's CSRs are responsible for, among other things: (a) booting up their computers and logging into several essential computer software programs and applications, as well as Defendant's phone system, before fielding phone calls; (b) primarily taking in-bound calls from

6

individuals who need assistance; (c) ensuring that every call and claim is documented and accounted for in Defendant's system; (d) reading emails daily with work instructions; and (e) logging out of the computer software programs and applications and the phones and shutting down their computers.

40.     Defendant's CSR jobs are hourly, non-exempt positions with rigid schedules that regularly require CSRs, including Plaintiff, to work at least eight (8) hours per day, on average five (5) days each week, and up to forty (40) hours or more in a workweek.

41.     These schedules result in CSRs routinely working overtime.

42.     Indeed, throughout their employment with Defendant, Plaintiff was required to work a substantial amount of unpaid time, including overtime, as part of their roles as a CSR.

43.     At all relevant times, Defendant controlled its CSRs' work schedules, duties, protocols, applications, assignments and employment conditions.

44.     Defendant was also responsible for training and continuing its CSRs' education in their role as CSRs.

45.     Defendant's CSRs all perform essentially the same tasks and are required to use the same or similar computer programs, software programs, applications and phone systems.

46.     These programs, applications and systems are integral and an important part of the CSRs' work, and they cannot perform their jobs without them.

47.     Defendant's CSRs all follow the same timekeeping process, are subject to the same relevant timekeeping and attendance policies, and are subject to quality assurance reviews based on the same or similar criteria.

48.     Defendant expressly instructs and trains CSRs to have all of their computer networks, software programs and applications open and ready at the start of their scheduled shifts.

7

49. Defendant furthermore enforces their policy of requiring computer networks, programs and applications be open and ready at the commencement of a CSR's shift through their performance metrics and schedule adherence policies.

50. More specifically, being clocked in but unavailable to take or make calls for too long can result in poor performance scores and possible disciplinary action, up to and including termination.

51. Defendant's scoring guidelines measure a CSRs' ability to adhere to mandatory protocols and are comprised of various performance metrics, including but not limited to the CSRs' complete and correct resolution of issues and inquiries from consumers.

52. Defendant's performance metrics also graded CSRs on how quickly they could resolve his or her calls.

53. Defendant also evaluates CSRs based on their "Availability," meaning the amount of time they are available to take calls while clocked-in.

54. A CSR cannot be prepared to take calls, and thus make themselves available, without having loaded and logged into all of their computer systems.

55. Together, these performance metrics necessarily require that CSRs be logged into all computer programs, applications and systems, and have all reference materials and available resources open at the time of the first call.

56. In order to be fully prepared to promptly and efficiently handle calls, CSRs were required to have loaded and logged into all of their computer programs at the beginning of the shift.

57. Furthermore, CSRs are graded on the amount of time they are clocked in but unavailable to take calls.

58.    Defendant subjected Plaintiff and all other CSRs to discipline for clocking in after the start of their scheduled shift, which violated their companywide attendance policy.

59.    Additionally, while Defendant routinely scheduled CSRs to work forty hours per week, Defendant also prohibited CSRs from working overtime hours without advanced approval.

60.    Accordingly, recording the time spent working outside of their scheduled shift would violate Defendant's prohibition on unapproved overtime.

61.    Plaintiff's supervisors deterred them from recording work time outside of their scheduled shifts.

62.    Failing to accurately account and pay for all of the time actually worked by employees is a clear violation of the FLSA's record keeping requirements. *See* 29 U.S.C. § 211(c).

63.    Because CSRs are prohibited from including all hours worked in their time recorded, Defendant's compensation policy and system fails to properly account and compensate them for all time worked, including their overtime hours, each day and each workweek.

64.    Thus, the hours reflected on the CSRs' pay stubs are inaccurate and contrived by Defendant.

65.    In fact, as outlined below, Defendant maintains a common plan and policy pursuant to which they fail to pay their CSRs for no less than twelve (12) minutes per day of work performed during pre-shift time and during their lunch periods.

66.    This time could easily be recorded, accounted for and paid, but Defendant chose not to credit such time as time worked.

### A.    Pre-Shift Off-the-Clock Work – Computer Bootup

67.    In addition to their regularly scheduled shifts, and as mentioned above, Defendant's CSRs perform pre-shift work tasks for which they are uncompensated.

9

68.     Pursuant to Defendant's policies, training and direction, Defendant's CSRs are required to start up and log into various secure computer programs, software programs and applications in order to perform their jobs.

69.     The pre-shift startup and login process takes substantial time on a daily basis with said time averaging twelve (12) to fifteen (15) minutes per day, and the tasks can take longer (thirty (30) minutes or even more) if CSRs experience technical problems with the computer, software, and/or applications.

70.     Although there was some variation in computer programs used amongst various CSR positions, the core and essential programs used were the same for all CSRs.

71.     The aforementioned tasks are an integral and essential aspect of a CSR's job duties and responsibilities, as CSRs must have all of the above referenced computer programs, systems, and applications up and running on their computers in order to be prepared to accept or make calls.

72.     Yet, Defendant fails to compensate CSRs for the computer boot up tasks.

73.     Instead, Defendant maintains attendance policies that require them to be call-ready at their scheduled start time and discourage them from recording hours outside of their regularly scheduled shifts.

74.     As a result, Defendant maintains a common plan and policy pursuant to which they fail to pay CSRs for no less than twelve (12) minutes per day of work performed in connection with the above pre-shift activities.

### B.     Defendant Benefitted From the Uncompensated Off-the-Clock Work

75.     At all relevant times, Defendant directed and directly benefitted from the work performed by Plaintiff and similarly situated employees in connection with the above-described pre-shift activities performed by CSRs.

76. At all relevant times, Defendant controlled the work schedules, duties, protocols, applications, assignments and employment conditions of their CSRs.

77. At all relevant times, Defendant was able to track the amount of time CSRs spent in connection with the pre-shift activities.

78. Defendant failed to do so and failed to compensate CSRs for the off-the-clock work they performed.

79. At all relevant times, CSRs were non-exempt hourly employees, subject to the requirements of the FLSA.

80. At all relevant times, Defendant used its attendance, adherence and timekeeping policies against the CSRs in order to pressure them into performing the pre-shift off-the-clock work.

81. Defendant expressly trained and instructed CSRs to perform the above-described pre-shift activities *before* the start of their scheduled shifts, to ensure they were prepared to take or make calls (i.e., were "phone ready") the moment they clocked in for their shifts.

82. At all relevant times, Defendant's policies and practices deprived CSRs of wages owed for the pre-shift activities they performed.

83. Because Defendant's CSRs typically worked forty (40) hours or more in a workweek, Defendant's policies and practices also deprived them of overtime pay in many workweeks.

84. Defendant knew or should have known that the time spent by CSRs in connection with the pre-shift activities was compensable under the law.

85. In light of the explicit DOL guidance cited above, there is no conceivable way for Defendant to establish that they acted in good faith.

11

86.     Despite knowing CSRs performed work before and after their scheduled shifts and during their unpaid meal periods, Defendant failed to make any effort to stop or disallow the off-the-clock work and instead suffered and permitted it to happen.

87.     Unpaid wages related to the off-the-clock work described herein are owed to CSRs at the FLSA mandated overtime premium of one and one-half times their regular hourly rate because CSRs regularly worked in excess of forty (40) hours in a workweek.

<strong>C.     <u>Defendant's Failure to Include Incentive Payments in the Overtime Rate Calculation</u></strong>

88.     In addition to their regular hourly rate, CSRs were eligible for certain performance-based incentive payments.

89.     In violation of the FLSA, Defendant failed to include these payments in the calculation of the CSRs overtime rates, which resulted in the underpayment of overtime.

90.     Under the FLSA, the regular rate is the "keystone" to calculating the overtime rate. *Walling v. Youngerman-Reynolds Hardwood Co.*, 325 U.S. 419 (1945). It is "the hourly rate actually paid the employee for the normal, non-overtime workweek for which he is employed." 29 C.F.R. §778.108.

91.     No matter how an employee is paid—whether by the hour, by the piece, on a commission, or on a salary—the employee's compensation must be converted to an equivalent hourly rate from which the overtime rate can be calculated. 29 C.F.R. §778.109.

92.     "The regular hourly rate of pay is determined by dividing the employee's total remuneration for employment (except statutory exclusions) in any workweek by the total number of hours actually worked by the employee in that workweek for which such compensation was paid." *Id*.

93.     Defendant's compensation scheme, which included an hourly rate, plus incentive

pay, did not fall within any of the statutory exclusions from the regular rate as provided in 29 U.S.C. §§ 207(e)(1)-(8).

94.     An hourly plus commission-based employee's regular rate of pay is computed by reference to the number of hours the commission payment is intended to compensate. 29 C.F.R. §778.117.

95.     This is true regardless of whether the commission is the sole source of the employee's compensation or is paid in addition to a guaranteed salary or hourly rate, or on some other basis, and regardless of the method, frequency, or regularity of computing, allocating and paying the commission. *Id*.

96.     It does not matter whether the commission earnings are computed daily, weekly, biweekly, semimonthly, monthly, or at some other interval. *Id*.

97.     The fact that the commission is paid on a basis other than weekly, and that payment is delayed for a time past the employee's normal pay day or pay period, does not excuse the employer from including this payment in the employee's regular rate. *Id*.

98.     There is a statutory presumption that remuneration in any form must be included in the regular rate calculation.

99.     The burden is on Defendant to establish that any payment should be excluded.

100.    Thus, determining the regular rate starts from the premise that all payments made to Plaintiff for work performed are included in the base calculation unless specifically excluded by statute.

101.    Even "[w]hen the commission is paid on a weekly basis, it is added to the employee's other earnings for that workweek (except overtime premiums and other payments excluded as provided in section 7(e) of the Act), and the total is divided by the total number of

13

hours worked in the workweek to obtain the employee's regular hourly rate for the particular workweek. The employee must then be paid extra compensation at one-half of that rate for each hour worked in excess of the applicable maximum hours standard." 29 C.F.R. §778.118.

102.    Once the total amount of an employee's "regular" compensation is deduced, "the determination of the regular rate becomes a matter of mathematical computation." *Walling v. Youngerman-Reynolds Hardwood Co.*, 325 U.S. 419, 425 (1945).

103.    The regular rate must be expressed as an hourly rate because, although any method of compensating an employee is permitted, the FLSA imposes its overtime requirements in terms of hourly wages. Thus, if necessary, an employer must convert an employee's wages to rate per hour to determine compliance with the statute.

104.    Because Defendant's compensation scheme failed to incorporate all the non-discretionary bonuses, incentive pay, and shift differentials received in the regular rate of pay (and resulting overtime rates of pay), Defendant failed to properly compensate Plaintiff and its other CSRs under the FLSA.

## FLSA COLLECTIVE ACTION ALLEGATIONS

105.    Plaintiff bring this action pursuant to 29 U.S.C. § 216(b) of the FLSA on their own behalf and on behalf of:

> ***All current and former CSRs who worked for Defendant at any time during the three years preceding the filing of this Complaint up through and including judgment.***

(hereinafter referred to as the "FLSA Collective"). Plaintiff reserve the right to amend this definition if necessary.

106.    Defendant is liable under the FLSA for, *inter alia*, failing to properly compensate Plaintiff and other similarly situated CSRs.

14

107.    Excluded from the proposed FLSA Collective are Defendant's executives and administrative and professional employees, including computer professionals and outside salespersons.

108.    Consistent with Defendant's policy and pattern or practice, Plaintiff and the members of the FLSA Collective were not paid premium overtime compensation when they worked beyond forty (40) hours in a workweek.

109.    Defendant assigned and/or was aware of all of the work that Plaintiff and the members of the FLSA Collective performed.

110.    As part of its regular business practices, Defendant intentionally, willfully and repeatedly engaged in a pattern, practice and/or policy of violating the FLSA with respect to Plaintiff and the members of the FLSA Collective. This policy and pattern or practice includes, but is not limited to:

a.    Willfully failing to pay its employees, including Plaintiff and the members of the FLSA Collective, premium overtime wages for hours worked in excess of forty (40) hours per workweek;

b.    Willfully failing to record all of the time that their employees, including Plaintiff and the members of the FLSA Collective, worked for the benefit of Defendant and failing to compensate the FLSA Collective for the overtime work performed; and

c.    Willfully failing to include all renumeration in the calculation of the CSRs overtime rates.

111.    Defendant is aware or should have been aware that federal law requires them to pay Plaintiff and the members of the FLSA Collective overtime premiums for hours worked in excess of forty (40) per workweek.

112.    Defendant's unlawful conduct has been widespread, repeated and consistent.

113.    A collective action under the FLSA is appropriate because the employees described

15

above are "similarly situated" to Plaintiff under 29 U.S.C. § 216(b).

114. The employees on behalf of whom Plaintiff brings this collective action are similarly situated because (a) they have been or are employed in the same or similar positions; (b) they were or are performing the same or similar job duties; (c) they were or are subject to the same or similar unlawful practices, policy, or plan; and (d) their claims are based upon the same factual and legal theories.

115. The employment relationships between Defendant and every proposed FLSA Collective member are the same and differ only by name, location and rate of pay.

116. The key issue – the amount of uncompensated pre-shift start-up/log-in time, owed to each employee – do not vary substantially among the proposed FLSA Collective members.

117. Many similarly situated current and former CSRs have been underpaid in violation of the FLSA and would benefit from the issuance of a court-supervised notice of this lawsuit and the opportunity to join it.

118. Court-supervised notice of this lawsuit should be sent to the FLSA Collective pursuant to 29 U.S.C. § 216(b).

119. Those similarly situated employees are known to Defendant, are readily identifiable, and can be located through Defendant's records.

120. Plaintiff estimate that the proposed FLSA Collective, including both current and former employees over the relevant period, will include hundreds, if not thousands, of workers.

121. The precise number of FLSA Collective members should be readily available from a review of Defendant's personnel and payroll records.

### RULE 23 NATIONWIDE CLASS ACTION ALLEGATIONS

122. Plaintiff brings this action pursuant to Fed. R. Civ. P. 23(b)(2) and (b)(3) on their

16

own behalf and on behalf of:

> ***All current and former CSRs who worked for Defendant at any time during the applicable statute of limitations up through and including judgment.***

(hereinafter referred to as the "Rule 23 Class"). Plaintiff reserves the right to amend this definition as necessary.

123. Plaintiff's common law Rule 23 allegations are bought to the extent no state statutes exist for a particular CSR to recover unpaid straight time wages.

124. The members of the Rule 23 Class are so numerous that joinder of all Rule 23 Class members in this case would be impractical. Plaintiff reasonably estimates there are thousands of Rule 23 Class members. Rule 23 Class members should be easy to identify from Defendant's computer systems and electronic payroll and personnel records.

125. There is a well-defined community of interest among members of the Rule 23 Class and common questions of law and fact predominate in this action over any questions affecting individual members of the Rule 23 Class. These common legal and factual questions, include, but are not limited to, the following:

       a.    Whether the pre-shift time Rule 23 Class member spend on setting up their workstation is compensable time;

       b.    Whether the pre-shift time that Rule 23 Class members spend on start-up/log-in activities prior to "clocking in" for each shift is compensable time; and

       c.    Whether Defendant's failure to pay the Rule 23 Class members for this pre-shift time at their agreed upon rate constitutes a breach of contract and whether Defendant was unjustly enriched.

126. Plaintiff's claims are typical of those of the Rule 23 Class in that they and all other members Rule 23 Class suffered damages as a direct and proximate result of the Defendant's common and systemic payroll policies and practices.

127.    Plaintiff's claims arise from the same pay policies, practices, promises, and course of conduct as all other members of the Rule 23 Class's claims and their legal theories are based on the same legal theories as all other members of the Rule 23 Class.

128.    Plaintiff will fully and adequately protect the interests of the Rule 23 Class and have retained counsel who are qualified and experienced in the prosecution of nationwide wage and hour class actions.

129.    Neither Plaintiff nor her counsel have interests that are contrary to, or conflicting with, the interests of the Rule 23 Class.

130.    A class action is superior to other available methods for the fair and efficient adjudication of this controversy, because, *inter alia*, it is economically infeasible for members of the Rule 23 Class to prosecute individual actions of their own given the relatively small amount of damages at stake for each individual along with the fear of reprisal by their employer. Prosecution of this case as a Rule 23 class action will also eliminate the possibility of duplicative lawsuits being filed in state and federal courts throughout the nation.

131.    This case will be manageable as a Rule 23 class action. Plaintiff and their counsel know of no unusual difficulties in this case, and Defendant has advanced, networked computer and payroll systems that will allow the class, wage, and damages issues in this case to be resolved with relative ease.

132.    Because the elements of Rule 23(b)(3) are satisfied in this case, class certification is appropriate.  *See Shady Grove Orthopedic Assoc., P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 130 S. Ct. 1431, 1437 (2010) ("[b]y its terms [Rule 23] creates a categorical rule entitling a plaintiff whose suit meets the specified criteria to pursue his claim as a class action").

133.    Because Defendant acted and refused to act on grounds that apply generally to the

Rule 23 Class and declaratory relief is appropriate in this case with respect to the Rule 23 Class as a whole, class certification pursuant to Rule 23(b)(2) is also appropriate.

## COUNT I
### (29 U.S.C. § 216(b) Collective Action)
### Violation of the FLSA, 29 U.S.C. § 201, *et seq*.
### Failure to Pay Overtime Wages

134.    Plaintiff re-alleges and incorporates all previous paragraphs herein.

135.    At all times relevant to this action, Defendant was engaged in interstate commerce, or in the production of goods for commerce, as defined by the FLSA.

136.    At all times relevant to this action, Plaintiff and the FLSA Collective were "employees" of Defendant within the meaning of 29 U.S.C. § 203(e)(1) of the FLSA.

137.    Plaintiff and the FLSA Collective, by virtue of their job duties and activities actually performed, are all non-exempt employees.

138.    Plaintiff and the FLSA Collective either: (1) engaged in commerce; or (2) engaged in the production of goods for commerce; or (3) were employed in an enterprise engaged in commerce or in the production of goods for commerce.

139.    At all times relevant to this action, Defendant "suffered or permitted" Plaintiff and the FLSA Collective to work and thus "employed" them within the meaning of 29 U.S.C. § 203(g) of the FLSA.

140.    At all times relevant to this action, Defendant required Plaintiff and the FLSA Collective to perform no less than twelve (12) minutes of off-the-clock work booting up and shutting down computer systems per shift, but failed to pay these employees the federally mandated overtime compensation for the off-the-clock work.

141.    In workweeks where Plaintiff and other FLSA Collective members worked forty (40) hours or more, the uncompensated off-the-clock work time, and all other overtime, should

19

have been paid at the federally mandated rate of 1.5 times each employee's regularly hourly wage, including nondiscretionary incentive pay where applicable. 29 U.S.C. § 207.

142.    As demonstrated above, Defendant routinely failed to pay overtime premiums for hours worked over forty.

143.    Defendant's violations of the FLSA were knowing and willful.

144.    Defendant knew or could have determined how long it takes its CSRs to perform their off-the-clock work.

145.    Further, Defendant could have easily accounted for and properly compensated Plaintiff and the FLSA Collective for these work activities, but did not.

146.    The FLSA, 29 U.S.C. § 216(b), provides that as a remedy for a violation of the Act, an employee is entitled to his or her unpaid wages (including unpaid overtime), plus an additional equal amount in liquidated damages (double damages), plus costs and reasonable attorneys' fees.

## COUNT II
### (Rule 23 Class Action)
### Breach of Contract

147.    Plaintiff reallege and incorporate all previous paragraphs herein.

148.    This Count applies only to workweeks were the FLSA's overtime protections are inapplicable (less than 40 hours) and the CSR has no state statute to recover unpaid straight time wages.

149.    At all times relevant to this action, Defendant had a binding and valid contract with Plaintiff and every other member of the Rule 23 Class to pay each employee for each hour they worked at a pre-established (contractual) regularly hourly rate in consideration of the work duties Plaintiff and the Rule 23 Class members performed on Defendant's behalf.

150.    Defendant's contractual promises to pay Plaintiff and each member of the Rule 23

20

Class' applicable hourly rate is evidenced by, among other things, each pay stub issued to Plaintiff and the members of the Rule 23 Class.

151. Upon information and belief, each member of the Rule 23 Class, including Plaintiff, is paid on an hourly rate.

152. Plaintiff and every other Rule 23 Class member accepted the terms of Defendant's contractual promises and performed under the contract by doing their jobs and carrying out the work they performed each shift including the unpaid, off-the-clock work that was required of them, accepted by Defendant, and that they performed, in connection with pre-shift activities, described herein.

153. By not paying Plaintiff and every other Rule 23 Class member the agreed upon hourly wage for the work they performed each shift in connection with the off-the-clock work they performed, Defendant systematically breached its contracts with Plaintiff and each member of the Rule 23 Class.

154. On occasion, CSRs missed time from work causing them to work under forty (40) hours in a given week.

155. To the extent there is no other state law remedy available, Plaintiff's and the members of the Rule 23 Class's remedies under the FLSA are inadequate in this case to the extent Defendant paid them more than the federally mandated minimum wage of $7.25 per hour but less than forty (40) hours per week.

156. As a direct and proximate result of Defendant's contractual breaches, Plaintiff and every other member of the Rule 23 Class have been damaged (to the extent there is no other state law remedy) in amount to be determined at trial.

## COUNT III
### (Rule 23 Class Action)
### Unjust Enrichment

157. Plaintiff re-allege and incorporate all previous paragraphs herein.

158. This Count is pled in the alternative to Counts I and II, pursuant to Fed. R. Civ. P. 8(d)(2)-(3).

159. This Count applies only to workweeks were the FLSA's overtime protections are inapplicable (less than 40 hours), and to the extent that there is a finding that the parties lacked a contract providing for payment of hourly wages for all hours worked.

160. At all times relevant to this action, Defendant promised Plaintiff and every other member of the Rule 23 Class a pre-established regular hourly rate in consideration of the work duties Plaintiff and the members of the Rule 23 Class performed for the benefit of Defendant.

161. Plaintiff and every other member of the Rule 23 Class relied upon Defendant's promise for the pre-established regular hourly rate and performed by doing their jobs and carrying out their required work duties.

162. By not paying Plaintiff and every other member of the Rule 23 Class the agreed upon hourly wage for the off-the-clock work they performed each shift Defendant was unjustly enriched.

163. Plaintiff and the members of the Rule 23 Class performed off-the-clock work tasks at the request of and without objection by Defendant.

164. Defendant received and accepted the above-referenced off-the-clock work services from Plaintiff and every member of the Rule 23 Class and enjoyed the benefits derived therefrom.

165. Upon information and belief, Defendant used the monies owed to Plaintiff and every other member of the Rule 23 Class to finance its various business ventures or pay its equity

owners.

166. Defendant has been unjustly enriched by the retention of monies received pursuant to the services Plaintiff and the members of the Rule 23 Class performed for Defendant's benefit, without having compensated Plaintiff and the Rule 23 Class for the same.

167. Plaintiff and the Rule 23 Class suffered detriment due to Defendant's failure to compensate them for the off-the-clock work described herein, in that Plaintiff and the Rule 23 Classes were deprived of the ability to utilize that time, effort and their resources in a profitable manner.

168. As a direct and proximate result of Defendant's actions, and to the extent there is no other state law remedy available, Plaintiff and every other member of the Rule 23 Class suffered damages, including but not limited to, loss of wages.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on their own behalf, on behalf of the putative FLSA Collective, and the Nationwide Rule 23 Class request judgment as follows:

a. Certifying this case as a collective action in accordance with 29 U.S.C. § 216(b) with respect to the FLSA claims set forth herein, and permitting prompt notice to issue to all similarly-situated employees;

b. Certifying this action (Counts II and III) as a class action pursuant to Rule 23(b)(2) and (b)(3);

c. Ordering Defendant to disclose in computer format, or in print if no computer readable format is available, the names and addresses of all collective action members, and Rule 23 members, and permitting Plaintiff to send notice of this action to all those similarly situated individuals, including the publishing of notice in a manner that is reasonably calculated to apprise the Class members of their rights by law to join and participate in this lawsuit;

d. Designating Plaintiff as the representatives of the FLSA collective action and undersigned counsel as Class counsel for the same;

e. Designating Plaintiff as the representative of the Rule 23 Nationwide Class;

f.      Declaring Defendant violated the FLSA and the DOL's attendant regulations as cited herein;

g.      Declaring Defendant's violation of the FLSA was willful and/or in reckless disregard of the FLSA;

h.      Declaring Defendant breached its contracts with the CSRs as cited herein;

i.      Declaring Defendant was unjustly enriched, as explained herein;

j.      Declaring Defendant's violations of the state laws was willful;

k.      Granting judgment in favor of Plaintiff and against Defendant and awarding Plaintiff and the collective action and the Rule 23 Classes the full amount of damages and liquidated or treble damages available by law;

l.      Awarding reasonable attorneys' fees, penalty interest, and costs incurred by Plaintiff in filing this action as provided by statute;

m.      Awarding the issuance of civil penalties and forfeitures as discussed herein;

n.      Awarding other pre- and post-judgment interest to Plaintiff on these damages; and

o.      Awarding such other and further relief as this Court deems appropriate.

## JURY DEMAND

Plaintiff, individually and on behalf of all others similarly situated, by and through her attorneys, hereby demand a trial by jury pursuant to Rule 38 of the Federal Rules of Civil Procedure and the court rules and statutes made and provided with respect to the above-entitled cause.

Dated: June 17, 2026                      Respectfully Submitted,

                                          **MORGAN & MORGAN, P.A.**

                                          */s/Angeli Murthy*
                                          Angeli Murthy, Esq.
                                          PA Bar No.: 93699
                                          8151 Peters Road, Suite 4000
                                          Plantation, FL 33324
                                          Phone: (954) 327-5369
                                          Email: amurthy@forthepeople.com

                                          Andrew R. Frisch, *PHV forthcoming*
                                          8151 Peters Road, Suite 4000

Plantation, FL 33324
Phone: (954) WORKERS
Fax: (954) 327-3013
Email: AFrisch@forthepeople.com

*Counsel for Plaintiff and the
Putative Collective/Class Members*